UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GENERAL MOTORS LLC,

       Plaintiff,

  v.

LEWIS BROS., L.L.C.,
SAMUEL LEWIS, Individually, and
TIMOTHY LEWIS, Individually,

       Defendants.

**DECISION
and
ORDER**

10-CV-00725S(F)

---

APPEARANCES:  STEPHENS & STEPHENS
         Attorneys for Plaintiff
         ROBERT HUGH STEPHENS, of Counsel
         410 Main Street
         Buffalo, New York 14202

         RICHARD J. LIPPES & ASSOCIATES
         Attorneys for Defendants
         RICHARD J. LIPPES, of Counsel
         1109 Delaware Avenue
         Buffalo, New York 14209

         LEWIS BROS., L.L.C., *Pro Se*[1]
         466 Southlake Boulevard
         Richmond, Virginia 23236

         SAMUEL LEWIS, *Pro Se*
         2312 Grey Oak Drive
         Richmond, Virginia 23236

         TIMOTHY LEWIS, *Pro Se*
         1316 Arbor Ridge Lane
         Richmond, Virginia 23236

---

[1] Lewis Bros., L.L.C. was unrepresented until Mr. Lippes's appearance on May 31, 2012 (Doc. No. 80).

## JURISDICTION

This action was referred to the undersigned by Honorable William M. Skretny on December 14, 2010, for nondispositive pre-trial matters. The case is presently before the court on Plaintiff's Second Motion to Compel (Doc. No. 63), filed January 20, 2012.

## BACKGROUND

Plaintiff General Motors LLC ("Plaintiff" or "GM"), commenced this action on September 2, 2010, seeking to recover from Defendants Lewis Bros., L.L.C. ("Lewis Bros."), Samuel Lewis ("Samuel Lewis"), and Timothy Lewis ("Timothy Lewis") (together, "Defendants"), the costs GM has incurred, and will incur in the future responding to conditions of environmental contamination caused by Defendants who allegedly have engaged in conduct in violation of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq*., resulting in the release of oil contaminated with polychlorinated biphenyl materials ("PCBs") onto adjoining lands owned by GM. Plaintiff asserts twelve claims for relief including (1) enforcement of restrictive covenants ("First Claim"); (2) breach of contract ("Second Claim"); (3) for account stated ("Third Claim"); (4) breach of implied contract or *quantum meruit* ("Fourth Claim"); (5) unjust enrichment ("Fifth Claim"); (6) trespass ("Sixth Claim"); (7) private nuisance ("Seventh Claim"); (8) recovery under CERCLA § 107 of clean-up expenses from owner of contaminated property ("Eighth Claim"); (9) recovery under CERCLA § 107 of clean-up costs from current operator of facility ("Ninth Claim"); (10) strict liability under New York Navigation Law §§ 172 and 181 ("Tenth Claim"); (11) avoidance of fraudulent conveyances under New York Debtor and Creditor

Law §§ 273 and 278 ("Eleventh Claim"), and (12) breach of duty by directors and officers of an insolvent corporation ("Twelfth Claim"). The First through Eighth, and Eleventh Claims are asserted against Lewis Bros., the Ninth Claim is asserted against Timothy Lewis, the Tenth Claim is asserted against Lewis Bros. and Samuel Lewis, and the Twelfth Claim is asserted against Samuel and Timothy Lewis. Defendants' answer was filed on December 13, 2010 (Doc. No. 9).

On March 14, 2011, Plaintiff filed a motion seeking a preliminary injunction (Doc. No. 15) ("PI Motion"), restraining Lewis Bros. from engaging in the wrongful conduct as alleged in the Complaint, and for appointment of a receiver to oversee the activities of Lewis Bros. in preventing hazardous substances from migrating onto GM's property, and to ensure the assets of Lewis Bros. are not diverted from proper corporate purposes. A Scheduling Order filed May 25, 2011 (Doc. No. 37) ("May 25, 2011 Scheduling Order"), directed the parties to engage in expedited discovery to prepare for a hearing on Plaintiff's PI Motion.

Pursuant to the May 25, 2011 Scheduling Order, on May 27, 2011, Plaintiff served Defendants with Interrogatories and Requests for Production ("Discovery Demands"). Defendants' responses to Plaintiff's Discovery Demands, served June 28, 2011, objected to all requests for financial information concerning Lewis Bros., Samuel Lewis, and Timothy Lewis.

On September 21, 2011, Defendants' counsel filed a motion to withdraw (Doc. No. 45). In an order entered September 26, 2011 (Doc. No. 46), the undersigned directed Plaintiff to file any response to the motion to withdraw, and scheduled oral argument on the motion for October 18, 2011, requesting that Defendants, given that

corporations are required to appear in federal court by counsel and may not proceed *pro se*, to advise the court if new counsel had been obtained for Lewis Bros. and provide the identity of such counsel.  Nether Samuel nor Timothy Lewis appeared on October 18, 2011 for oral argument and the undersigned denied the motion to withdraw, directing Defendants' counsel to comply with the May 25, 2011 Scheduling Order.

On October 24, 2011, motions to compel discovery were filed by Defendants (Doc. No. 49) ("Defendants' Motion") and by Plaintiff (Doc. No. 50) ("Plaintiff's First Motion").  Oral argument was held before the undersigned on December 8, 2011, following which Defendants withdrew their motion and Plaintiffs' First Motion was denied as premature. (December 8, 2011 Minute Entry (Doc. No. 60)).  During the December 8, 2011 oral argument, Defendants' then counsel, John G. Horn, Esq., agreed that Defendant Samuel Lewis would appear for a deposition and would not object to questions regarding the financial information sought by Plaintiff.  On January 18, 2012, Defendants' attorney filed a second motion to withdraw as counsel.  (Doc. No. 62).

On January 20, 2012, Plaintiff filed its Second Motion to Compel (Doc. No. 63) ("Plaintiff's Second Motion to Compel"), seeking an order compelling Defendants to (1) produce Samuel Lewis, Timothy Lewis, and a representative of Lewis Bros. for deposition on subjects relevant to the pending PI Motion including financial transactions of Lewis Bros. and related entities and the financial condition of those entities and individuals; (2) provide full and complete responses to Plaintiff's discovery demands; (3) supplement and revise, as necessary, any prior responses to Plaintiff's discovery

4

demands; and (4) make available for deposition any witnesses under the control of Lewis Bros. who are reasonably anticipated to testify at oral argument on Plaintiff's pending PI Motion.  Plaintiff's Second Motion to Compel is supported by the attached Affirmation of R. Hugh Stephens, Esq. (Doc. No. 63-1) ("Second Stephens Affirmation"), and exhibits 1 and 2 (Doc. No. 63-2) ("Defendants' Exh(s). __"), and incorporates by reference the Affirmation of R. Hugh Stephens, Esq. filed October 24, 2011 in support of Plaintiff's First Motion to Compel (Doc. No. 50-1) ("First Stephens Affirmation").  On February 3, 2012, Defendants, in opposition to Plaintiff's Second Motion to Compel, filed the Affirmation of John G. Horn, Esq. (Doc. No. 66) ("Horn Affirmation"), of counsel to Defendants' then attorneys, Harter Secrest & Emery LLP ("Harter Secrest").  On February 10, 2012, Plaintiff filed Plaintiff's Reply to Harter Secrest & Emery's Response to Plaintiff's Motion to Compel (Doc. No. 68) ("Plaintiff's Reply"), and exhibits 1 through 7 (Doc. No. 68-1) ("Plaintiff's Reply Exh(s). __").

    Oral argument on Plaintiff's Second Motion to Compel and the second motion to withdraw as counsel was held before the undersigned on February 22, 2012 (Doc. No. 70) ("February 22, 2012 Minute Entry").  Following oral argument, the undersigned reserved decision on Plaintiff's Second Motion to Compel, and ordered Plaintiff to provide by March 1, 2012, a statement clarifying which interrogatories and document requests remained outstanding, as well as a memorandum of law regarding the remedy or sanctions Plaintiff seeks, and granted the second motion of Harter Secrest to withdraw as counsel. Accordingly, Plaintiff filed on March 1, 2012, the Affirmation of R. Hugh Stephens (Doc. No. 71) ("Stephens Sur-Reply Affirmation"), with exhibits 1 through 5 (Doc. No. 71-1) ("Plaintiff's Sur-Reply Exh(s). __"), and the Memo [*sic*] of Law

in Support of Plaintiff's Second Motion to Compel (Doc. No. 72) ("Plaintiff's Memorandum").

Based on the following, Plaintiff's Second Motion to Compel is GRANTED.

## **FACTS**[2]

General Motors Corporation ("GMC"), operated in the Town of Tonawanda a forge facility ("the forge facility") located at 2390 Kenmore Avenue, and an engine plant ("the engine plant"), located on River Road on land adjacent to and downgradient of the forge facility, until February 28, 1994, when GMC sold the forge facility to American Axle and Manufacturing ("AAM").

The separation of the forge facility from the engine plant involved dividing a parcel of real property with shared utilities. In particular, a shared storm sewer ("the storm sewer"), lies along the border between the engine plant and the forge facility. Mill water, stormwater and wastewater is collected in the storm sewer, diverted into an oil/water/sediment separator ("the storm sewer interceptor system") operated by GM, where the water is processed, and then returned to the Niagara River, a nearby international waterway, in accordance with a New York State Pollutant Discharge Elimination System ("SPDES") permit. Upon selling the forge facility to AAM, GMC and AAM also executed the Tonawanda Services Agreement ("Services Agreement") and the Tonawanda Wastewater and Stormwater Agreement ("Wastewaters Agreement"). GMC was to continue, pursuant to the Services Agreement, to provide water and

---

[2] Taken from the pleadings and motion papers filed in this action.

electricity to the forge facility and, pursuant to the Wastewater Agreement, to manage storm and wastewater from the forge facility.

Following the sale, AAM operated the forge facility until December 3, 2008, when AAM sold the forge facility to Defendant Lewis Bros., a Virginia corporation with Defendants Samuel and Timothy Lewis serving as officers, directors and shareholders. To date, Lewis Bros. remains the owner of the forge facility.  At the same time, the Services Agreement and the Wastewaters Agreement were assigned by AAM to Lewis Bros., and Lewis Bros. also entered into a lease agreement ("the lease agreement") with FormTech Industries, LLC ("FormTech"), an automobile parts manufacturer that subsequently purchased certain of the forge facility's operating assets which FormTech intended to use to manufacture automobile parts at the forge facility.  The lease agreement provided that FormTech would prepay certain costs associated with its lease of the forge facility.

The 1994 Asset Purchase Agreement ("1994 APA") between GMC and AAM, the 2008 Purchase Agreement ("2008 PA") between AAM and Lewis Bros., the 1994 deed by which GMC conveyed to AAM the property on which the forge facility is located, and the 2008 deed conveying that same property from AAM to Lewis Bros. ("the documents") contain provisions and covenants prohibiting the treating, storing or disposal of any hazardous wastes, hazardous substances or toxic substances at the forge facility.  These same documents permit Lewis Bros. to accumulate such substances or wastes as allowed under the relevant environmental laws, without a license or permit, in a safe and environmentally appropriate and lawful manner so long as such accumulation has no adverse impact or affect on the engine plant property.

The documents further provide for an easement over the forge facility property allowing the owner of the engine plant property to take action to prevent or correct any violation of the documents' contract provisions and deed covenants.

The 2008 PA between Lewis Bros., AAM and GMC also required Lewis Bros. to provide GMC, by February 1, 2009, with a best management practices ("BMP") plan detailing how Lewis Bros. intended to manage hazardous substances on the forge facility to prevent the emanation of such substances to the engine plant and the resulting interference with the engine plant's ability to discharge wastewater and stormwater into the Niagara River in accordance with its SPDES permit.  Lewis Bros., however, has never provided the BMP plan.

On June 1, 2009, GMC filed for bankruptcy.  On July 10, 2009, the engine plant was purchased by Plaintiff GM, and GM has continued to own and operate the engine plant since that date.

On October 1, 2009, certain forge facility operating assets owned by FormTech were purchased by Hephaestus Holdings, Inc. ("HHI").  Active manufacturing operations at the forge facility ceased in October 2009, although both FormTech and HHI continued to store equipment at the facility.  After the cessation of manufacturing operations at the forge facility, Lewis Bros. commenced selling scrap metal presumably taken from the forge facility.

On January 5, February 2, August 24 and 31, September 28, and October 8 and 12, 2009, testing performed in the storm sewer bordering the forge facility and the engine plant detected PCBS migrating from the forge facility onto the engine plant property.  On September 2, 2009, Plaintiff discovered oily water emanating from the

forge facility into the storm sewer. The PCB-contaminated oily water released from the forge facility, upon entering the storm sewer, proceeded into the waste and storm water management systems at the engine plant, resulting in the discharge of PCBs into the Niagara River in violation of the engine plant's SPDES permit, threatening Plaintiff's continued operation of the engine plant based on such violations. Plaintiff maintains that the BMP plan Lewis Bros. was required to prepare, pursuant to the 2008 PA, and the Wastewaters and Services Agreements, would have involved locating and assessing potential sources of PCB contamination throughout the forge facility. Rather than preparing the BMP plan, however, Lewis Bros. conducted scrapping and demolition activities that caused the release of PCB contamination from the forge facility into the storm sewer. To manage the contamination and prevent further discharge of PCB-contaminated water into the Niagara River in violation of the SPDES permit, GM plugged the storm sewer, yet Lewis Bros. has refused to reroute its storm sewer as required under the Waterwaters and Services Agreements.

Since the cessation at the forge facility of active manufacturing operations in October 2009, Lewis Bros. has received more than $ 950,000 from the sale of scrap metal taken from the forge facility, and rent from both FormTech and HHI in excess of $ 775,000. Despite income exceeding $ 1.7 million, Lewis Bros. has failed to pay expenses associated with maintaining the forge facility, including utilities and property taxes, or the cleanup of PCB contamination at the engine plant. Plaintiff commenced this action seeking to recover from Defendants the response costs in connection with the cleanup of the PCB contaminated materials that emanated from the forge facility onto the engine plant property. Plaintiff maintains that rather than investing in the

maintenance of the forge facility property, Lewis Bros. is diverting its assets, *i.e.*, cash proceeds from its stripping activity at the forge facility, to individuals, entities and activities in Virginia, which are unrelated to the activities of Lewis Bros.

      Oral argument on the PI Motion was held on May 9, 2011, before Chief District Judge William M. Skretny.  During the oral argument, counsel for Defendants stated Defendants did not disagree with Plaintiff's request for limited discovery including the purported insolvency of Lewis Bros., an issue relevant to resolution of the PI Motion. May 9, 2011 Hearing Tr.[3] at 23-27, and 29-31.  In accordance with the May 25, 2011 Scheduling Order directing the parties to engage in expedited discovery to prepare for a hearing on Plaintiff's PI Motion, Plaintiffs, on May 27, 2011, served on Defendants written Discovery Demands, many of which requested information regarding Defendants' assets and finances.  Plaintiff maintains such information is relevant to the pending PI Motion, particularly whether Defendants are diverting assets from Lewis Bros. that should be used to maintain the forge facility, to prepare and implement the BPM plan at the forge facility, and to reimburse Plaintiff for the environmental response costs incurred at the engine plant.  In their responses to Plaintiff's Discovery Demands, served June 28, 2011, Defendants objected to all requests for financial information.

      Plaintiff also served on May 27, 2011, subpoenas on several local scrap dealers, leading Plaintiff to discover that Lewis Bros. had received money in exchange for scrap metal, and learning the identity of a bank account belonging to Lewis Bros. from which Plaintiff, on July 1, 2011, subpoenaed banking records which revealed Samuel Lewis

---

[3] References to "May 9, 2011 Hearing Tr." are to the transcript of the hearing held before Judge Skretny on May 9, 2011, a copy of which is filed as Plaintiff's Reply Exh. 1.

and J.B. Elder Properties, LLC ("J.B. Elder"), had received funds from Lewis Bros. Additional subpoenas directed to the personal bank accounts of Samuel Lewis and J.B. Elder were served on October 4, 2011.

Meanwhile, on July 14, 2011, Plaintiff served deposition notices on one David Billett ("Billett"), and Samuel Lewis, for depositions respectively scheduled on July 26 and July 29, 2011. Neither deposition was taken and Plaintiff requested several extensions of the discovery deadline. On September 14, 2011, Plaintiff learned from Defendants' counsel, Mr. Horn, that his law firm, Harter Secrest, intended to move to withdraw as counsel for Defendants and for a thirty-day stay of discovery to permit Defendants to retain new counsel. Mr. Horn further advised he would be unable to produce Samuel Lewis or Billet for a deposition and did not intend to take any deposition of Plaintiff's representatives prior to a decision on the motion to withdraw as counsel. The motion to withdraw was filed on September 21, 2011. At oral argument on the motion to withdraw, conducted October 18, 2011, neither Samuel nor Timothy Lewis appeared, and the motion to withdraw was denied.

At oral argument held on December 8, 2011 on motions to compel filed October 24, 2011 by Defendants (Doc. No. 49), and Plaintiff (Doc. No. 50), Defendants withdrew their motion to compel, Defendants' counsel agreed not to object to questions pertaining to financial information Plaintiff intended to pose at the deposition of Samuel Lewis, and Plaintiff's motion to compel was thus denied as premature. Plaintiffs, on January 11, 2012, served a deposition notice pursuant to Fed.R.Civ.P. 30(b)(6) ("Rule 30(b)(6)") on Lewis Bros. advising Plaintiff intended to depose a representative of Lewis Bros. on January 31, 2012 in Richmond, Virginia. On January 12, 2012, Plaintiff served

11

subpoenas on Samuel Lewis, Timothy Lewis, and Judith McCoy Lewis advising Plaintiff intended to depose them on January 31, 2012 in Richmond Virginia. Samuel Lewis, represented by telephone by Mr. Horn, appeared as scheduled for his deposition, both in his personal capacity and as the alleged sole owner and manager of Lewis Bros. Samuel Lewis, however, refused to answer any questions related to Lewis Bros. because Lewis Bros. was then without legal counsel. Samuel Lewis also failed to bring to the deposition any of the financial information or records Plaintiff requested in the Discovery Demands, but stated in response to Plaintiff's inquiry his intention to provide such information and records within two or three weeks. To date, no such information or records have been produced.

Judith McCoy Lewis who possesses check-writing privileges for Lewis Bros.'s financial accounts appeared at the January 31, 2012 deposition, but refused to testify because she was not represented by legal counsel. Timothy Lewis did not appear at his scheduled deposition.

Recently, Titan Wrecking and Environmental, LLC has been performing demolition of the main building on the forge facility premises. The demolition allegedly has resulted in further PCB spills and contamination.

## **DISCUSSION**

Plaintiff's Second Motion to Compel seeks an order pursuant to Fed.R.Civ.P. 37 ("Rule 37"), compelling Defendants to comply with their respective discovery obligations including (1) producing for deposition Samuel Lewis, Timothy Lewis, and a representative for Lewis Bros., to testify on subjects relevant to Plaintiff's pending PI

Motion, including the financial transactions of Lewis Bros., Lewis Bros., Inc., and related entities; (2) providing full and complete responses to Plaintiff's Discovery Demands; (3) supplementing and revising, as necessary, any prior responses to Plaintiff's Discovery Demands; and (4) making available for deposition those witnesses under the control of Lewis Bros. who are reasonably anticipated to be called on to testify at a hearing on the pending PI Motion.  Plaintiff maintains the Second Motion to Compel is necessary because the efforts to date to depose Defendants and to obtain satisfactory responses to Plaintiff's Discovery Demands have failed to produce any meaningful discovery in response to Plaintiff's numerous requests.  Second Stephens Affirmation ¶¶ 9-12.  The only papers Defendants filed in response to Plaintiff's Second Motion to Compel is the Horn Affirmation in which Mr. Horn explains that he appeared by telephone at the January 31, 2012 deposition of Samuel Lewis because he was unaware the deposition was going forward on that date, but that based on his participation in the deposition, Mr. Horn believed an agreement was reached that Samuel Lewis would be providing Plaintiff with the financial information and records requested.[4]  Horn Affirmation ¶¶ 3-6.

In further support of Plaintiffs' Second Motion to Compel, Plaintiff explains that at his January 31, 2012 deposition, Samuel Lewis based his refusal to respond to numerous questions on the fact that Lewis Bros. was not represented by counsel.  Stephens Reply Affirmation ¶ 6.  According to Plaintiff, Judith McCoy Lewis also refused to testify at her deposition because she was not represented by legal counsel, asserting she would need 30 days to obtain counsel.  *Id.* ¶ 8.  Judith McCoy Lewis also

---

[4] Despite filing a notice of appearance as Defendants' counsel on May 31, 2012, Mr. Lippes has sought leave of the court to file papers on Defendants' behalf in opposition to Plaintiffs' Second Motion to Compel.

failed to bring subpoenaed records to the deposition. *Id.*

At the court's request, Plaintiff clarified the Discovery Demands at issue include Interrogatories 1 through 20, 23, and 24, and Document Request 1.  Stephens Sur-Reply Affirmation ¶¶ 42-43.  Plaintiff further asserts such information remains relevant to Plaintiff's PI Motion seeking appointment of a receiver, as well as the Eleventh and Twelfth Claims for Relief asserting fraudulent conveyance and breach of fiduciary duty. *Id.* ¶¶ 36-37; Plaintiff's Memorandum at 3.

The Interrogatories and Document Request at issue all seek to obtain financial records and information of all Defendants.  Although Defendants have raised general objections to all of the Discovery Requests, Defendants have not specified the basis for any of the general objections, nor have Defendants submitted a privilege log describing the withheld information or any privilege asserted.  Significantly, when a party withholds relevant information that is discoverable, pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to promptly provide the adverse party with notice of the claimed privilege by preparing and serving a privilege log sufficiently describing the withheld information to enable the adverse party to assess the validity of the asserted privilege.  Fed.R.Civ.P. 26(b)(5)(A); *see also* W.D.N.Y. Local R.Civ.P. 26(e)(2) (requiring assertion of privilege "be furnished in writing when the party responds to such discovery or disclosure").  A failure to comply with this requirement results in a waiver of the asserted privilege in the withheld information.  *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (failure to provide adequately detailed court-ordered privilege log waives privilege); *Robbins & Meyers, Inc. v. J.M. Huber Corp.*, 2010 WL 2595332, at *5 (W.D.N.Y. June 24, 2010)

(plaintiff required to produce two documents plaintiff asserted was protected because any privilege that may have attached to two documents was waived by failing to list the documents in a privilege log provided to defendants); *Bove v. The Allied Group*, 2004 WL 5902631, *1 (W.D.N.Y. Oct. 28, 2004 (failure to provide privilege log complying with local rule waives privilege); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, *3 n. 1 (S.D.N.Y. Oct. 17, 2000) (citing *PKFinans Int'l. Corp. v. IBJ Schroder Leasing Corp.*, 1996 WL 525862, *3 (S.D.N.Y. Sep't. 17, 1996) ("party's failure to produce [privilege] log results in a waiver of any privilege that might otherwise be asserted" (citing caselaw))). As such, any privilege that could have been asserted as to any of the requested information has been waived by Defendants' failure to timely assert the privilege.

      With one exception, Defendants' responses to the Interrogatories and the Document Request at issue, including Interrogatories 2 through 20, 23, and 24, and Document Request 1, include an objection on the basis the Plaintiff has failed to demonstrate it is entitled to the requested information in accordance with *Telebrands Corp. v. IM Import USA Corp.*, 2010 WL 814205 (E.D.N.Y. March 3, 2010) ("*Telebrands*"). Defendants' reliance on *Telebrands*, however, is unavailing. In particular, the plaintiffs in *Telebrands*, a case involving patent, trademark, trade dress, and copyright infringement and dilution, and false advertising, served the defendants with discovery demands seeking information pertaining to defendants' financial positions for the years 2008 to 2010, contending the information was relevant to determining whether the defendants had violated a preliminary injunction order on consent preliminarily enjoining the defendants from transferring or disposing of any

assets for the purpose of hiding such assets. *Telebrands*, 2010 WL 814205 at * 1. The plaintiff did not contend that the disputed discovery was relevant to any claim or defense raised by the parties. *Id.* at *2. Nor did the preliminary injunction, drafted by the parties and so-ordered by the court, contain any language entitling the plaintiff to discovery to police the defendants' compliance with the injunction. *Id.* Accordingly, the plaintiff's motion to compel discovery of several years of the defendant's financial position was denied. *Id.*

Discovery of an adverse party's assets and financial information generally is not permitted during the course of litigation unless such discovery involves the specific elements of a claim at issue in the case. *Resolution Trust Corp. v. Thorton*, 41 F.3d 1539, 1547 (D.C.Cir. 1994) (holding plaintiff lacked authority to use administrative subpoena in seeking defendant accounting firm's financial and insurance information to determine cost-effectiveness of suit because use of such subpoenas attempted to improperly circumvent federal discovery's general prohibition against discovery of an adversary's financial and insurance information until after obtaining a judgment against the opposing party); *Metal Management Inc. v. Schiavone*, 514 F.Supp.2d 227, 239-40 (D.Conn. 2007) (denying discovery where plaintiffs failed to show defendant's current financial condition or net worth bears any relation to plaintiffs' application for relief other than whether defendant possessed any assets out of which a judgment could be paid); *Sequa Corporation v. Gelmin*, 1995 WL 404726, *2 (S.D.N.Y. July 7, 1995) (holding discovery of opposing party's assets ordinarily not permitted unless such discovery is relevant to merits of pending claim or in response to a defense). The rule prohibiting discovery of an opponent's financial information until a judgment is obtained protects a

defendant's right to privacy in its financial matters. *See Evans v. Calise*, 1994 WL 185696, at * 2 (S.D.N.Y. May 12, 1994) (denying plaintiff's motion to compel where plaintiff failed to establish subject interrogatories pertaining to defendant's wealth were reasonably calculated to lead to discovery of admissible evidence on any claim or defense). Nevertheless, a party's financial information can be relevant for discovery purposes if it implicates specific elements of a claim or defense asserted in the dispute. *See Daval Steel Products, Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367-68 (2d Cir. 1991) (affirming sanctions for violation of discovery order requiring production of defendant's financial information necessary to establish those factors of corporate control supporting an "alter ego" theory of liability). *See also Signal Capital Corporation v. Frank,* 164 F.R.D. 7, 10-11 (S.D.N.Y. 1995) (allowing substantial discovery regarding corporate directors, including details of directors' personal finances necessary to establish plaintiff's claims against directors for waste of corporate assets, mismanagement, and violation of fiduciary duties); *Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062 at 15-16, 19 n. 20 (S.D.N.Y. Mar. 28, 1991) (permitting financial discovery pertaining to changes "in corporate form, transfers of assets and information regarding related entities" where information sought was "entirely relevant" to "claims of alter ego liability and fraudulent conveyance"). The circumstances of the instant case establish that the exception to the general rule against financial discovery until a judgment is obtained applies because the financial information Plaintiff seeks is related both to Plaintiff's pending PI Motion, as well as the claims raised in the Complaint.

In particular, in contrast to *Telebrands*, here, Plaintiff is not seeking discovery of Defendants' financial information to determine whether Defendants are in possession of

any funds out of which a judgment could be paid should Plaintiff ultimately prevail in this action; rather, Plaintiff is attempting to assess whether Defendants are, as Plaintiff alleges, engaging in fraudulent conveyances of Lewis Bros.'s assets by diverting assets from Lewis Bros. to other entities and individuals, thus supporting Plaintiff's PI Motion seeking, *inter alia*, an order appointing a receiver to ensure Lewis Bros. does not divert any assets from their intended corporate purposes to avoid the financial impact of its forge facility ownership obligations, as well as Plaintiff's Eleventh Claim for avoidance of fraudulent conveyances under New York Debtor and Creditor Law §§ 273 and 278, and Twelfth Claim for breach of duty by directors and officers of an insolvent corporation.  *See Frank*, 164 F.R.D. at 10-11 (permitting discovery of defendants' personal finances where "very little" about the case was "ordinary" and "[t]he allegations of personal enrichment go hand in hand with the allegations of financial mismanagement" such that the financial discovery sought was relevant to the merits of the pending claims, rather than to whether funds existed out of which to pay a judgment).  Because the financial information Plaintiff seeks in their Discovery Demands relates to claims asserted by Plaintiff, Plaintiff's entitlement to affirmative equitable relief compelling Lewis Bros.'s full compliance with its obligations to avoid environmental contamination to Plaintiff's property, Defendants' objections to producing the information on the basis that Plaintiff has failed to demonstrate it is entitled to the requested information in accordance with *Telebrands* are without merit.  Simply put, Defendants cannot rely on the general prohibition against discovery of financial information prior to obtaining a judgment when the financial information is crucial to Plaintiff's ability to establish its fraudulent conveyance and breach of fiduciary duty

claims, as well as the need for a receiver to prevent further wasting of corporate assets as alleged in connection with the PI Motion.

Plaintiff also seeks to compel Defendants' response to Interrogatory 1 seeking information from the individual Defendants regarding their personal finances, to which Defendants' responded that Samuel Lewis was "subscribing" to the responses and could be contacted through his attorneys.  Again, Defendants do not raise any particular objection to this Interrogatory and, of course, Mr. Lewis's response is not a valid objection.  As with the Interrogatories Defendants oppose on the basis of *Telebrands*, however, the information requested by Interrogatory 1 also seeks information necessarily relevant to both Plaintiff's pending PI Motion, as well as several of the claims raised in the Complaint such as the Eleventh Claim for avoidance of fraudulent conveyances, and the Twelfth Claim for breach of duty by directors and officers of a an insolvent corporation.  Nor is there any basis on which to find such information is cumulative of other information already produced, or would be burdensome to produce.  Accordingly, Defendants' objections to Interrogatory 1 are also without merit and thus overruled.

On this record, Plaintiff's Second Motion to Compel is GRANTED.  Defendants are ORDERED to produce the discovery requested by Plaintiff **within twenty (20) days of this Decision and Order**.

Furthermore, although not requested by Plaintiff, the court is required, upon granting a motion to compel discovery, to order the party whose conduct necessitated the motion to pay the reasonable costs of such motion, including attorney's fees, in the absence of one of three exceptions, none of which is applicable here.  Fed.R.Civ.P.

37(a)(5)(A) (providing that if a motion to compel is granted, "the court <u>must</u>, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the pay or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making th emotion, including attorney's fees.") (underlining added).  Accordingly, Plaintiff is ORDERED to file **within ten (10) days of this Decision and Order** an affidavit detailing the costs of the instant motion, including attorney's fees; Defendants shall have <u>10 days</u> to file any response.

## CONCLUSION

Based on the foregoing, Plaintiff's Second Motion to Compel (Doc. No. 63), is GRANTED.  Defendants are ORDERED to produce the information requested by Plaintiff **within twenty (20) days of this Decision and Order**.  Plaintiff is directed to file its affidavit of costs **within ten (10) days of service of this Decision and Order**. SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   July <u>31</u>, 2012
             Buffalo, New York